ALD-025                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2963
_____

ROBERTO SANTOS,
                                    Appellant
v.

DAVID L. BUSH; KAREN BALICKI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 09-cv-02018)
District Judge: Noel L. Hillman

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 25, 2012
Before: SLOVITER, VANASKIE and WEIS, Circuit Judges

(Opinion filed: November 6, 2012)
_____

OPINION
_____

PER CURIAM.

Appellant Roberto Santos appeals the District Court's order granting summary

judgment to the defendants. For the reasons that follow, we will summarily affirm.

Santos is serving a term of imprisonment of thirty years to life for murder. In this

civil rights action, 42 U.S.C. § 1983, Santos alleged a violation of his constitutional right

to due process on the ground that he was involuntarily administered medication while incarcerated at South Woods State Prison in New Jersey. Santos named Dr. David L. Bush and Karen Balicki, the Administrator of South Woods State Prison, as defendants, alleging that they approved all treatment that was forced on him. Since we write primarily for the parties, and they are familiar with this case, we recite only the facts necessary to our discussion.

While incarcerated at East Jersey State Prison in December, 2007, Santos exhibited bizarre behavior, and stopped sleeping and eating. Santos was evaluated by a psychiatrist who determined that he was psychotic and in need of psychotropic medication. Department of Corrections medical staff at East Jersey State Prison counseled him to take Risperdal but Santos was unwilling. Through the remainder of December, 2007, Santos refused medication, was non-compliant with his treatment plan, and was not receptive to counseling. Eventually a prison psychiatrist prepared and submitted an Involuntary Medication Report ("IMR"), pursuant to N.J. Admin. Code § 10A:16–11.1 and the DOC's Mental Health Services Internal Management Procedure for Non–Emergency Involuntary Medication Administration (hereinafter, "the IMA Procedure"). This December 31, 2007 IMR indicated that Santos refused his prescribed medication despite multiple attempts to counsel him on the nature of his illness, including paranoia and delusions, and how medication helps lessen such symptoms. The IMR further indicated that involuntary administration of medication would benefit Santos by lessening his delusional beliefs, and it outlined the psychiatrist's belief that, if Santos remained medication non-complaint, he would become more delusional and stop eating

2

again.  Involuntary administration of Haldol by injection was recommended whenever Santos refused oral Risperdal.

An independent Treatment Review Committee conducted a hearing on January 3, 2008 and concluded that Santos should be involuntarily medicated because he presented a substantial risk of imminent harm to himself.  Santos began a Forced Medication Protocol on January 5, 2008, and, after one injection of medication, he began to voluntarily comply with his treatment plan.  Santos was transferred to South Woods State Prison on or about January 7, 2008.  Santos's delusions continued after his arrival at South Woods State Prison.  He was evaluated by a prison psychiatrist and expressed his opposition to taking medication; he admitted that he had been "cheeking" his Risperdal.  Santos again was diagnosed with psychosis, and another IMR was prepared documenting his bizarre thought processes, lack of insight regarding his need for medication, and potential to deteriorate further.  A six-month extension of Santos's Forced Medication Protocol with injections of Haloperidol or possibly Risperdal Consta was recommended.  Another Treatment Review Committee was convened, approving the recommendation.

Eventually, a third IMR was prepared, this time by defendant Dr. Bush, on July 3, 2008.  Like the psychiatrists before him, Dr. Bush evaluated Santos and concluded that he was suffering from psychosis, that he was deeply mistaken about his ability to handle his mental health problems on his own, and that he continued to refuse medication despite repeated efforts on the part of correctional medical staff to counsel him.  As required by the IMA Procedure, Dr. Bush outlined his belief that the possible gains from involuntary medication outweighed any possible side effects.  Dr. Bush recommended the

3

involuntary administration of Risperdal Consta every fourteen days. A third Treatment Review Committee was convened, and the committee found that Santos still presented a substantial risk of imminent harm to himself, that he was unable to care for himself, and that he was incapable of participating in his treatment plan without medication. Based on these findings, the Treatment Review Committee again voted in favor of extending the Forced Medication Protocol. When Santos's refusal to take medication persisted in the months following the July 25, 2008 Treatment Review Committee hearing, a fourth IMR was prepared and submitted by Dr. Bush, and a fourth Treatment Review Committee hearing was convened. Similar to the prior three hearings, the Treatment Review Committee determined that, without medication, continued decompensation of Santo's mental health was likely. The committee again voted to continue the Forced Medication Protocol on February 17, 2009.

This civil rights action followed three months later. The defendants answered the complaint, and, thereafter, moved for summary judgment, Fed. R. Civ. Pro. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Santos submitted a response in opposition. In an order entered on June 15, 2012, the District Court granted summary judgment to the defendants.

Santos appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted Santos leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, and he has

4

submitted an informal brief, which we have considered.  Under Third Circuit LAR 27.4 and I.O.P. 10.6, we may summarily dispose of an appeal when it clearly appears that no substantial question is presented by the appeal.

We review a District Court's grant of summary judgment *de novo*.  Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007).  Summary judgment is proper where there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  We are required to view the facts in the light most favorable to Santos, and make all reasonable inferences in his favor, see Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), but "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine issue of material fact is one that could change the outcome of the litigation.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

As a threshold matter, we agree with the District Court that summary judgment in favor of prison Administrator Balicki was proper because Santos's claims against her are based solely on a theory of respondeat superior.  A civil rights claim cannot proceed exclusively on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Liability under section 1983 cannot be imposed absent personal involvement in the alleged actions, see Rizzo v. Goode, 423 U.S. 362, 375-77 (1976); Chincello v. Fenton, 805 F.2d 126, 133-34 (3d Cir. 1986), and there is no genuine issue of material fact with respect to whether Balicki had any direct and intentional

5

involvement in any of the decisions to involuntarily administer psychotropic medication to Santos.

With respect to the claims against Dr. Bush, under the Due Process Clause of the Fourteenth Amendment, prison inmates "possess[ ] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs . . ..: Washington v. Harper, 494 U.S. 210, 221 (1990). But psychotropic medication may be administered against an inmate's wishes where doing so is reasonably related to the DOC's legitimate penological interests, see id. at 223. Those interests include "combating the danger posed by [the inmate] to both himself and others … in a prison environment, and "provid[ing] prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution." Id. at 225. Ultimately, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227.

Certain procedural protections are required before an inmate can be medicated against his will, but where administrative hearing procedures comport with procedural due process, a judicial hearing is not required as a prerequisite to forcing medication on a mentally ill inmate. See id. at 231. In Washington, the Supreme Court approved the use of an independent administrative hearing committee which reviews the medication decision made by the psychiatrist, and gives independent consideration to whether the inmate suffers from a mental disorder, and whether, as a result of the disorder, he is a

6

danger to himself or others, see id. at 232-35. Additional protections approved of include

whether the inmate is permitted to be present at the hearing, and whether periodic

reviews are conducted. See id.

Here, Dr. Bush established through his motion for summary judgment that N.J.

Admin. Code § 10A:16-11.1 and the DOC's IMA Procedure comport with substantive

and procedural due process.[1] The administrative code and the IMA Procedure apply only

where a treating psychiatrist determines that psychotropic medication is clinically

indicated and in the best medical interest of a seriously mentally ill inmate who presents a

danger to himself or others. See Washington, 494 U.S. at 227 (holding that "the Due

Process Clause permits the State to treat a prison inmate who has a serious mental illness

---

[1] Section 10A:16-11.1 provides:

> (a) Pursuant to Washington, et al. v. Harper, 494 U.S. 210, 110 S. Ct. 1028 (1990), clinically indicated psychotropic medications which have been prescribed for the inmate by a psychiatrist as part of an individualized treatment plan may be administered by the responsible health care provider to any seriously mentally ill inmate against the will of the inmate and consistent with the medical interests of the inmate.
> (b) Administration of clinically indicated involuntary psychotropic medications is in an inmate's medical interest where one or more of the following concerns exists:
> 1. There is substantial likelihood of serious physical harm to the inmate or to others;
> 2. There is a substantial likelihood of significant property damage;
> 3. The inmate is unable to care for himself or herself so that the inmate's health or safety is endangered; and/or
> 4. The inmate is incapable of participating in any treatment plan which would offer the inmate a realistic opportunity to improve his or her condition.

N.J. Admin. Code § 10A:16-11.1 (2007). The IMA Procedure is twelve pages in length and was submitted in support of the defendants' motion for summary judgment.

with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."). The DOC's IMA Procedure is reasonably related to New Jersey's legitimate interests in responding to the dangers posed by a mentally ill inmate, in providing inmates with treatment in their medical interest, and in ensuring the safety of prison staff, administrative personnel, and inmates. The IMA Procedure requires that staff make reasonable efforts to educate the inmate to accept medication voluntarily before forcing medication on him, and, only when that fails does the treating psychiatrist prepare and submit an IMR. That IMR must state that the risks of psychiatric decompensation and dangerousness outweigh the risks related to involuntarily medicating the inmate. The IMA Procedure employs an independent administrative hearing committee which ultimately decides the issue of forced medication; no member of the Treatment Review Committee may be involved in the inmate's treatment or diagnosis. Inmates are permitted to be present at the hearing, and periodic reviews and new IMR's are required if the treating psychiatrist seeks to extend the involuntary administration of medication.

Drawing all reasonable inferences in favor of Santos, the summary judgment record demonstrates that N.J. Admin. Code § 10A:16-11.1 and the IMA Procedure comport with substantive and procedural due process, and that the decision to involuntarily medicate him was made only after the IMA Procedure was scrupulously followed. Santos was diagnosed with a serious mental illness, and the diagnosis was

8

based on a series of well-documented symptoms.[2]  The recommendation for forced medication was made only after Dr. Bush was unsuccessful in obtaining Santos's voluntary compliance, and only after Dr. Bush concluded that forced medication was in Santos's medical interests because he presented a danger to himself or others, was unable to care for himself, and was incapable of participating in a treatment plan that would improve his condition.  The record taken as a whole could not lead a rational trier of fact to find for Santos and thus there is no genuine issue for trial.  <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 587.

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment to the defendants.  Appellant's motions for preliminary injunctive relief and a default judgment are denied.  Appellant's request for an investigation, contained in an item titled "Notice of Performance," is denied.

---

[2]  Several other psychiatrists employed by the DOC, other than Dr. Bush, evaluated Santos at various times and observed similar symptoms and made the same diagnosis of psychosis.